## CIRCUIT COURT OF BALTIMORE CITY.

Filed November 23, 1897.

SAVINGS BANK OF BALTIMORE
VS.
MAGGIE S. GORMAN, ET AL.

*Luther M. Reynolds* for plaintiff.

*Gans & Haman, M. A. Mullin* and *Niles & Wolff* for defendants.

DENNIS, J.—

On June 4th, 1895, Teresa McConnell had an account in the Savings Bank of

Baltimore, in her own name exclusively, for $2,662.63.

On that day, she went to the bank with Maggie Gorman, surrendered her book, and opened a new account with the following entry in the book:

"Teresa McConnell, and her niece, Maggie Gorman, joint owners, payable to the order of either, or the survivor."

Teresa McConnell retained possession of the bank book until her death, when it was delivered to her executor.

The sole question in the case is, did this constitute a gift from Teresa McConnell to Maggie Gorman, of the fund so deposited, or of any part of it?

To make a valid gift, *inter vivos*, it is essential:

1st. That the intention of the donor so to do must clearly appear; and—

2nd. This intention must also be accompanied by a delivery of the subject-matter of the gift to the donee, so complete as to wholly divest the donor of any control over it.

In my opinion, neither of these essentials appear in this case.

The intention of the donor is to be gathered not solely from the entry in the bank-book, but from all the circumstances and facts surrounding the transaction. As between the depositor and the bank, perhaps the entry in the bank-book might be conclusive; and if the bank paid the money according to the terms of that entry, it might be protected; but as between the donor and the donee, in arriving at the intention of the donor, this entry is not conclusive, but only a fact to be considered in connection with the other circumstances to determine the donor's intention.

This would be true, even if the terms of the entry had an absolutely definite legal signification; for while the donor might be willing to have an entry made that would protect the bank in any action it might take, it by no means follows that she thereby intended to vest an absolute right to the deposit in the donee. But these words "joint-owners" have no precise and definite legal meaning: they may mean joint-tenants, or tenants in common; and we must look, therefore, to the other circumstances in the case to determine what the donor meant by them, and how far they are to be considered as indicating an intention on her part to divest herself of the control of the fund and to give an interest in it to Maggie Gorman.

Leaving out, therefore, the intention sought to be drawn purely as a legal consequence from the terms of the entry on the bank book, the evidence shows, I think, beyond dispute, that there was no intention on the part of Teresa to make a gift of this money to Maggie. It is unnecessary to recite the testimony bearing on this point, as I do not understand the learned counsel for the claimant to contend that, apart from the legal conclusions to be drawn from the terms of the entry on the bank-book, there is sufficient evidence to prove an intention of gift on the part of Teresa.

As to the second point:

Conceding, however, that an intention of gift by Teresa is shown by the testimony, or is to be conclusively presumed from the entry on the bank-book, did she effectuate this intention by such delivery of the subject matter of the gift—*i. e.*, the money on deposit—as to vest an indefeasible title in Maggie Gorman? To have done so, she must have *absolutely parted with all control over the fund;* for so long as the *locus penitentia* remained in her, and she could have withdrawn the fund or devoted it to other purposes, the gift was incomplete.

Had the entry on the bank-book been simply in favor of "Teresa and Maggie, payable to the order of either, or the survivor," it is settled by repeated decisions in this State, that no right by way of gift would have passed to Maggie; the gift being incomplete by reason of the continued control of the fund retained by the depositor under the form of the entry.

Taylor vs. Henry, 48 Md. 555.

Dougherty vs. Moore, 71 Md. 249.

But the learned counsel for the claimant contends that the present case differs from those cited by reason of the word "joint-owners" used in the entry: that, in the former cases, the second named party was vested with no *title*, but had authority to draw only as agent of the depositor; while in the case at bar it is claimed that when the depositor took out the new book in the name of the two as joint-owners, there was a complete vesting of the *title* in Maggie Gorman, as fully as it

could be done; and that therefore she was absolutely entitled to an interest in the fund of which she could not be deprived, even if Teresa McConnell had exercised her right under the form of the entry and drawn the whole fund in her lifetime, and hence the control over the fund retained by Teresa by her continued possession of the bank book, could not defeat Maggie's right.

Conceding, for a moment, that this theory is sound, what was Maggie's right as "joint-owner?" Was it that of a *joint-tenant?* If so, then upon Teresa's death Maggie would be entitled to the whole fund by reason of the survivorship which is always an incident to that estate. Was her interest that of a tenant in common? Then, upon Teresa's death, Maggie would have been entitled to only an equal moiety in the fund. This dilemma shows that the expression "joint-owners" was not used in any definite legal sense, and that it is impossible to derive any conclusion of intention from it as a legal phrase, with ascertained significance.

But, supposing that Teresa is to be conclusively presumed, from the mere terms of this entry, to have intended to vest a title of some sort, however undefined, in Maggie, did she so completely part with the control of the fund as to make it a valid gift?

As long as she retained possession of the bank book, without which, under the by-laws of the bank, neither could draw, but with which either could draw, I think Teresa's retention of the book secured to her such control of the fund as to prevent the gift from being complete, no matter if she did intend to vest title in Maggie. Conceding that Teresa meant to vest title, that title was not complete until she absolutely abandoned control of the deposit; and the added words of the entry, "subject ·to the order of either, or the survivor." coupled with her sole retention and control of the bank book showed, that she never intended to part with dominion over the fund. *There never was a moment, from the time Teresa changed the form of her deposit and took out her new book up to the date of her death when Maggie Gorman could have drawn a dollar of this money, or when Teresa McConnell could not have drawn the whole of it.*

When the entry of "joint-owners" was made, the fund was still kept subject to the order of Teresa McConnell by the words, "payable to the order of either or the survivor"; and it is impossible to see at what period Teresa's control over the fund ceased.

If the contention of the learned counsel for the claimant is correct, if Maggie had an absolute title as joint-owner as soon as the entry on the bank book was made, then, had Teresa McConnell at any time after making the deposit exercised her right under the terms of the entry and drawn the whole fund and spent it, or drawn upon it from time to time for her living expenses, or have given it either by gift *inter vivos* or by will to some especially favored relative, still, at her death, Maggie Gorman would have the right to claim from Teresa's estate the full amount of the fund, if the entry "joint-owners" should be construed to mean "joint-tenants,"—or the half of it, if the words are to be construed as having the legal signification of tenants in common; nay more, Maggie would have had the right the very day the deposit was made to have filed a bill in equity, and asked for a division of the fund between herself and Teresa in such proportions as the Court might determine they were respectively entitled to as "joint owners." It is impossible to believe from any part of the evidence in this case that Teresa ever intended any such result, or that Maggie Gorman ever expected it or thought herself entitled to claim it. But leaving out the question of intention wholly, whether deduced from the parol testimony or the terms of the entry, I am of the opinion that a *joint possession* is not such *delivery* or *change* of *possession* as is required by the law to effectuate a gift, *inter vivos.* It is begging the question to say that by such an entry as we are considering there is a change of *title;* there can be no change of *title.* until the donor has put the donee in *absolute* control of the subject-matter of the gift, and this can never be where the right of possession is retained by the donor, even if this right of possession is a joint one.

While the case of Young vs. Young So., N. Y. 431, differs somewhat from the case at bar, I think the principle upon which it is decided is applicable to this case; and I adopt the following language as laying down the correct rule: "A gift cannot be made by creating a *joint possession of donor and*

*donee*, even though the intention be that each shall have an interest in the chattels * * *. If, therefore, the donor retained the custody of the bonds for the purpose of collecting the accruing interest, or *even if they were placed in the joint custody or possession of himself and the donee there was no sufficient delivery to constitute a gift.*